

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| KODY DWAYNE ARDOIN, §<br>Petitioner, §<br>§<br>v. §<br>§<br>CHARISMA EDGE, §<br>Warden, FCI La Tuna, §<br>Respondent. § | | Cause No. EP-25-CV-51-DCG |

## MEMORANDUM OPINION AND ORDER

Kody Dwayne Ardoin, federal prisoner number 26348-078, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1. His opposed petition is denied.

### BACKGROUND

Ardoin is a 30-year-old federal prisoner who was confined at the La Tuna Federal Correctional Institution in El Paso County, Texas. Pet'r's Pet., ECF No. 1 at 1. His presence in El Paso County when he filed his petition subjects him to the jurisdiction of this Court. 28 U.S.C. § 124 (d)(3). He is currently confined to the Federal Correctional Institution in Manchester, Kentucky. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 26348-078, last visited Oct. 1, 2025). His projected release date is March 8, 2029. *Id.*

For over two decades, Ardoin's family operated a crack cocaine business from their home in Beaumont, Texas. *United States v. Walker*, 750 F. App'x 324, 325 (5th Cir. 2018). Local police would occasionally make arrests, and family members would serve time on state charges, but other family members would quickly fill the void and continue the operation. *Id.*

On May 4, 2016, Ardoin, his brother, his cousin, and ten other defendants were charged by a grand jury in the Eastern District of Texas with conspiracy to possess with the intent to distribute

more than 280 grams of cocaine base, in violation of 21 U.S.C. § 846. *Ardoin v. United States*, No. 1:15-CR-119, 2021 WL 3912533, at *1 (E.D. Tex. Aug. 6, 2021), *report and recommendation adopted in part*, No. 1:19-CV-180, 2021 WL 3884325 (E.D. Tex. Aug. 30, 2021). Ardoin pled not guilty but was found guilty by a jury and sentenced to 324 months in prison on August 24, 2017. *Id.* at *2. Ardoin was granted credit for time already served on a prior state sentence in the judgment:

> The defendant is to receive credit for time previously served under Docket No. 292919 in the Criminal Court at Law No. 3, Docket No. 12-14399 in the Criminal District Court, and Docket No. 14-18948 in the 252nd District Court, all in Beaumont, Jefferson County, Texas. To the extent the Bureau of Prisons will not credit the total of 51 months previously served under these docket numbers the sentence of 324 months is adjusted by 51 months pursuant to USSG §5G1.3(b), resulting in a remainder of 273 months of imprisonment to be served on Count 1 of the Third Superseding Indictment.

*United States v. Ardoin*, 1:15-CR-00119-MAC (E.D. Tex.), J. Crim. Case, ECF No. 590 at 2. Ardoin was granted clemency, and his sentence was reduced to 180 months, on January 17, 2025. *Id.*, Executive Order of Clemency, ECF No. 815 at 15.

In his petition, Ardoin claims 18 U.S.C. § 3632, which addresses the development of risk and needs assessment system for federal prisoners, does not grant the Bureau of Prisons (BOP) the authority to determine when an inmate is (1) eligible to receive First Step Act (FSA) Earned Time Credits (FTCs) which may be applied toward the inmate's prerelease community-based placement and toward a prisoner's early release to supervision, (2) ineligible to receive FTCs, or (3) disqualified from applying his ETCs toward his prerelease community-based placement. Pet'r's Pet., ECF No. 1 at 6. He contends the regulations at 28 C.F.R. §§ 523.40–44, which provide the rules for calculating and applying FTCs, are both illegal and exceed the authority granted the BOP by Congress. *Id.* He maintains the BOP has not properly calculated his projected release date and

2

denied him 51 months of credits he believes he is due. *Id.* He asks the Court to declare 28 C.F.R. §§ 523.41(c)(4) and (5) invalid and order Warden Edge to reduce his commuted sentence by an additional 51 months. *Id.* at 7.

Edge responds Ardoin's habeas petition should be dismissed for three reasons. Gov't's Resp., ECF No. 9. First, Ardoin has not exhausted his administrative remedies. *Id.* at 2–5. Second, Ardoin's claims fail on their merits because the BOP has accurately calculated and applied his FTCs. *Id.* at 6–12. Finally, to the extent Ardoin challenges the BOP's definition of when a sentence "commences" or attacks other BOP regulations relating to the calculation of his FTCs, he does not articulate how those regulations are invalid or how they even apply to him. *Id.* at 12–17.

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

Ardoin does not dispute that he has not exhausted his claims. He alleges his claim—that the 51-month sentence reduction already awarded by the sentencing court if applied to his commutated sentence would require his immediate release—"cannot be resolved by the B.O.P. as this was directly ordered by the District Court at sentencing." Mem. in Supp., ECF No. 4 at 1–2.

3

He asserts his claim—that the BOP "exceeded its statutory authority"—was "a direct attack on the lawfulness of the Bureau's regulation [and] it would have been futile for him to make an administrative challenge seeking this relief from those who are charged to enforce the regulation.'" *Id.* (quoting *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012)). Hence, he "contends there were no administrative remedies available." *Id.* at 2.

"[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies." *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). Indeed, a federal court does "not have jurisdiction over grievances related to [the] computation of sentences and sentencing credit until exhaustion of administrative review by the Bureau of Prisons." *Falcetta v. United States*, No. 20-50247, 2021 WL 5766571, at *1 (5th Cir. Dec. 3, 2021) (emphasis added) (citing *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992); *United States v. Wilson*, 503 U.S. 329, 335–36 (1992)).

> There are limited exceptions to the exhaustion requirement.
>
> Traditional circumstances in which courts have excused a claimant's failure to exhaust administrative remedies include situations in which (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim.

*Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 477 (5th Cir. 1997). But such exceptions apply only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating such circumstances. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994).

A federal prisoner must use the BOP's multi-tiered administrative remedy program to "seek formal review of an issue relating to any aspect of [his] confinement." 28 C.F.R. § 542.10(a).

4

Initially, he must attempt to informally resolve the complaint with the staff with Form BP-8. *Id.* § 542.13(a). If his informal attempts are unsuccessful, he must submit a written complaint to his warden on Form BP-9. *Id.* § 542.14. If he is not satisfied with the warden's response, he may appeal to his regional director on Form BP-10. *Id.* § 542.15. If still not satisfied, he may appeal to the "Central Office" using Form BP-11. *Id.*

Ardoin does not dispute that he has not exhausted his claims. Moreover, he has not explained why he has not exhausted the central claim in his petition—that BOP erred in calculating his sentence and release date.

The Fifth Circuit has long held that the BOP should be afforded the opportunity to rectify the error if failed to properly calculate a sentence. *See Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (explaining that an agency should be given the opportunity to correct its own errors before a party seeks judicial intervention). "In the event that a prisoner feels he has been improperly refused credit for time he has served in state custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010) (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)), aff'd, 566 U.S. 231 (2012); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition.").

The Court notes the BOP was not afforded an opportunity to rectify any purported error as Ardoin did not try to exhaust administrative remedies. Consequently, the Court finds Ardoin has

5

failed to (1) exhaust his administrative remedies or (2) meet his burden of demonstrating an entitlement to an exception to the exhaustion requirement. The Court accordingly finds that it lacks statutory or constitutional authority to adjudicate his dispute with the BOP. It notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Ardoin had properly exhausted, the Court would still not grant him the § 2241 habeas relief he seeks.

### B. Authority to Grant or Deny Sentencing Credit

Ardoin claims 18 U.S.C. § 3632, which addresses the development and implementation of a risk and needs assessment system for federal prisoners, does not grant the BOP the authority to determine when an inmate is (1) eligible to receive FTCs, (2) ineligible to receive FTCs, or (2) disqualified from applying his FTCs toward his prerelease community-based placement. Pet'r's Pet., ECF No. 1 at 6.

The authority to grant or deny sentencing credit is specifically reserved to the Attorney General and delegated to the BOP under 18 U.S.C. § 3585(b). *United States v. Wilson*, 503 U.S. 329, 334–335 (1992). "Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant." *Id.* at 335.

### C. Validity of 28 C.F.R. § 523.40–44

Ardoin contends the regulations at 28 C.F.R. §§ 523.40–44, which provide the rules for calculating and applying FTCs, are both illegal and exceed the authority granted the BOP by Congress. Pet'r's Pet., ECF No. 1 at 6. He asks the Court to declare 28 C.F.R. §§ 523.41(c)(4) and

6

(5) invalid. *Id.* at 7.

According to 18 U.S.C. § 3632, "[t]he Director of the Bureau of Prisons shall develop guidelines for the reduction of rewards and incentives … for prisoners who violate … evidence-based recidivism reduction program or productive activity rules." 18 U.S.C. § 3632(e). Consistent with the authority granted in the statute, the Director's guidelines provide "[a]n inmate cannot earn FSA Time Credits for programming or activities in which he or she participated before December 21, 2018, the date of enactment of the First Step Act of 2018." 28 C.F.R. §§ 523.42(b)(1). They further provide an inmate is not successfully participating in EBRR programs or PAs—and may not earn FTCs—when they "opt out" of BOP-recommended EBRR programs or PAs. 28 C.F.R. §§ 523.41(c)(4). They also explain that an inmate's refusal to participate or withdrawal from EBRR programs or PAs may be considered a disciplinary violation and may result in exclusion for further benefits or privileges. 28 C.F.R. §§ 523.41(c)(5).

The Court finds Ardoin's challenges to 28 C.F.R. §§ 523.41(c)(4) and (5) are without merit. Specifically, it notes these regulations are neither illegal nor exceed the authority granted by Congress. Indeed, the FSA's specific purpose is to create a system of earned time credits and other incentives to encourage prisoners to participate in certain programs. *See* 18 U.S.C. § 3632(d). The Court accordingly denies his request to declare 28 C.F.R. §§ 523.41(c)(4) and (5) are invalid.

Moreover, the Court finds the BOP properly applied 28 C.F.R. §§ 523.41(c)(4) and (5) when it calculated Ardoin's sentence.

The record reflects that Ardoin failed to successfully participate in his recommended educational programming for years, despite being repeatedly counseled by BOP staff members. *See* Gov't's Resp. Ex. 2 (Decl. of Christine Wohld), ECF No. 9-5. He arrived at his designated BOP facility on October 18, 2017. While Congress had not yet enacted the FSA, his initial

7

Individualized Reentry Plan recommended that he enroll in and complete a GED course. On December 21, 2018—the day the FSA became law—Ardoin started earning FSA time credits. From December 21, 2018, to December 12, 2019, he accrued 356 program days, which resulted in him earning 110 FTCs. On January 31, 2019, Ardoin chose to withdraw from his GED program. Therefore, he opted out of participating in a EBRR program or PA for purposes of earning FTCs. Ardoin admitted he "was advised his needs assessment recommended participation in the Bureau's GED Program. [He] declined this assignment which subsequently considered him 'opt'ed [sic] out' rendering all movants earned First Step Act incentives as null." Pet'r's Pet., ECF No. 4 at 1. He was regularly interviewed and asked to re-enroll in his GED programming. *See* Gov't's Resp. Ex. 2 (Decl. of Christine Wohld), ECF No. 9-5. Finally, he asked to re-enroll in the GED program on January 31, 2025. Since he re-enrolled, he has earned FTCs.

Ardoin also challenges the validity of 28 C.F.R. § 523.42(a), which provides "An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)."

Some district courts have determined that the BOP's use of 28 C.F.R. § 523.42(a) to define when an inmate's sentence commences for purposes of calculating when an inmate may begin earning FTCs is plainly inconsistent with the statutory language Congress enacted in 18 U.S.C. § 3632(d)(4) and § 3585(a). *See Brandon Sims*, 1:24-CV-1222-RP (W.D. Tex.), Order, ECF No. 11 at 4; *see also Perevoznikov v. Stover*, No. 3:23CV767 (OAW), 2024 WL 5265287 (D. Conn. Aug. 8, 2024) (holding 28 C.F.R. §§ 523.42(a) invalid).

Still, to the extent Ardoin argues that 28 C.F.R. § 523.42(a) is invalid, his argument fails because he was sentenced on August 24, 2017, and arrived at his BOP designated institution on

8

October 18, 2017—long before the enactment of the FSA on December 21, 2018. 28 C.F.R. § 523.42(b)(1). Therefore, 28 C.F.R. § 523.42(a) was never applied to Ardoin.

### D. Time Credits for Post-Clemency Sentence

Ardoin maintains the BOP has not properly calculated his projected release date and denied him 51 months of credit he believes he is due. Pet'r's Pet., ECF No. 1 at 6. He argues "the 51 months already awarded by the District Court, if applied to the commutated [sic] sentence, would require [his] immediate release." Mem. in Supp., ECF No. 4 at 1.

Ardoin was sentenced to a total term of 273 months after the sentencing court adjusted the sentence of 324 months downward by 51 months pursuant to Sentencing Guideline §5G1.3. *United States v. Ardoin*, 1:15-CR-00119-MAC (E.D. Tex.), J. Crim. Case, ECF No. 590 at 2. He subsequently received an executive grant of clemency, and his sentence was commuted "to a term of 180 months' imprisonment the sentence of imprisonment, for the offenses described to the Department of Justice, imposed" upon him with his term of supervised release and all other components of the sentence left intact. *Id.*, Executive Order of Clemency, ECF No. 815 at 15.

Distinct from the Article III powers conferred on the Judiciary, Article II of the Constitution provides the President with "[p]ower to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. CONST. art. II, § 2, cl. 1. The pardon power encompasses the power to commute criminal sentences. *Schick v. Reed*, 419 U.S. 256, 264 (1974). A commuted sentence is no longer "a judicially imposed sentence, but a presidentially commuted one. Absent some constitutional infirmity in the commutation order ... [courts] may not readjust or rescind what the President, in the exercise of his pardon power, has done." *United States v. Surratt*, 855 F.3d 218, 219 (4th Cir. 2017) (concurring opinion). Consequently, a court may not intervene and order the BOP to grant credit for previous

9

confinement on a commuted sentence. *See Hagelberger v. United States*, 445 F.2d 279, 280 (5th Cir. 1971) (per curiam) ("[S]ince the President conditioned commutation upon running the term of years from the date of commutation, petitioner is not entitled to any credit for jail time before the death sentence was commuted."); *see also Bishop v. United States*, 223 F.2d 582, 587–88 (D.C. Cir. 1955), *vacated*, 350 U.S. 961 (1956) ("It is settled that the power to pardon is an executive power not subject to judicial review.").

Section 7.c.(1) of BOP Program Statement 1330.15, Commutation of Sentence,[1] provides that "[i]f a petition for commutation of sentence is granted, institutional staff shall recalculate the inmate's sentence in accordance with the terms of the commutation order."

Ardoin's sentence was commuted to a term of 180 months' imprisonment by the executive grant of clemency. Therefore, his judicial sentence was commuted to an executive sentence. Ardoin's projected release date has been computed by the BOP in the only way that is consistent with the terms of the executive grant of clemency and with the BOP's sentencing guidelines. Contrary to his assertion, Ardoin has received credit for all the time to which he is entitled.

### E. Calculation of Sentence

Ardoin suggests the BOP has improperly calculated his FTCs under 18 U.S.C. § 3624(g)(2) and his release date under 18 U.S.C. § 3624(c). Pet'r's Pet., ECF No. 1 at 1. He maintains he should have been placed in pre-release custody on March 24, 2025, and released from BOP custody on September 24, 2025. *Id.* at 2.

The Sentencing Reform Act (SRA), which became effective in 1987, replaced parole with a system of good time credits (GTCs) and supervised release for federal prisoners. *Peugh v. United*

---

[1] The full text is available at https://www.bop.gov/policy/progstat/1330_015.pdf (last visited Oct. 2, 2025).

*States*, 569 U.S. 530, 535 (2013). The SRA left the authority with the Attorney General, through the BOP, to calculate and grant credits toward a prisoner's sentence. *United States v. Wilson*, 503 U.S. 329, 331–35 (1992).

The FSA adjusts the way the BOP calculates GTCs and increases the maximum number of days a prisoner can earn per year from 47 to 54 days. 18 U.S.C. § 3624(b)(1). It entitles a prisoner to apply those GTCs directly toward his sentence and release from BOP custody. *Id.*

The FSA also permits an eligible prisoner to accumulate FTCs for participating in evidence-based recidivism reduction (EBRR) programs and productive activities (PAs). *Id.* § 3632(d). It gives a prisoner the opportunity to earn ten days of FTCs for every 30 days of successful participation in EBRR programs and PAs. *Id.* § 3632(d)(4)(A)(i). It allows a prisoner at a "minimum" or "low risk" of recidivating to earn an additional five days of FTCs if he does not increase his risk levels over two consecutive assessments. *Id.* § 3632(d)(4)(A)(ii). But a prisoner is only eligible to have the FTCs applied to his sentence after he "has earned time credits ... in an amount that is equal to the remainder of [his] imposed term of imprisonment." *Id.* § 3624(g)(1)(A). The BOP has the discretion to apply FTCs toward a prisoner's prerelease community-based placement in an RRC or HC. *Id.* § 3624(g)(2); 28 C.F.R. § 523.44(b)–(c). The BOP's placement is "subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns." *Id.* § 3621(b). The BOP also has the discretion to apply up to 365 FTCs or twelve months toward a prisoner's early release to supervision. 18 U.S.C. § 3624(g)(3); 28 C.F.R. § 523.44(d).

The SCA applies to inmates regardless of whether they have earned and are eligible to apply ETCs and it grants the BOP the discretion to place a prisoner in an RRC for up to twelve

11

months. 18 U.S.C. § 3624(c)(1). It also allows the BOP to place a prisoner in HC for the shorter of (1) ten percent of the term of imprisonment of that prisoner, or (2) six months. *Id.* § 3624(c)(2). It requires the BOP to make placement decisions on an individual basis consistent with the criteria set forth in 18 U.S.C. § 3621(b).

Ardoin sentence commenced pursuant to 18 U.S.C. § 3585(a) on November 8, 2018. Mot. Summ. J., Ex. 2, Attach. 1 (Public Information Inmate Data), ECF No. 7-6. He was projected to receive 810 GTCs during his term of imprisonment. *Id.* He became eligible to accumulate FTCs beginning on December 21, 2018. *Id.,* Ex. 2, Attach. 3 (FSA Time Credit Assessment), ECF No. 7-8. By February 9, 2025, Ardoin had earned a total of 1080 FTCs. *Id.* In accordance with BOP policy, 365 FTCs were applied toward his early transfer to supervised release. *Id.* With the application of Ardoin's FTCs, his release date was changed from July 5, 2030, to July 5, 2029. *Id.,* Attach. 1 (Public Information Inmate Data), ECF No. 7-6.

Assuming Ardoin continues to accrue FTCs, he will earn an additional 285 FTCs during the remaining term of his imprisonment. *Id.,* Ex. 2 (Decl. of Bertha Tovar), ECF No. 7-5 at 6. This will give Ardoin a total of 1000 ETCs which may be applied toward his prerelease custody. *Id.* These FTCs will make him eligible to transition to a residential reentry facility on October 9, 2026. *Id.* But Ardoin has not yet been considered for placement in a residential reentry center as he is neither within twelve months of his projected release date (July 5, 2029) nor is he within 60 days of the date of his conditional transition to a community facility (October 9, 2026). *Id.* at 7.

After reviewing Ardoin's record, Bertha Tovar, a case management coordinator with the BOP, concluded that Ardoin "was scored accurately, and his FSA Time Credits have been accruing and applied correctly." *Id.* at 7.

**F. Injunction**

Ardoin seeks a permanent injunction on the BOP applying 28 C.F.R. §§ 523.41(c)(4) and (5). Pet'r's Pet., ECF No. 1 at 7.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As shown above, Ardoin cannot show that the BOP exceeded its authority when it implemented regulations requiring the successful participation in EBRRs or PAs. Therefore, Ardoin cannot establish the substantial likelihood of success on the merits, and his request for a preliminary injunction must be denied.

## CONCLUSION AND ORDERS

The Court concludes that Ardoin has failed to establish that the BOP erred when it determined he was ineligible to receive FTEs for his conviction for a violation of 18 U.S.C. § 844(h) and thereafter revoked his FTCs. 18 U.S.C. § 3632(d)(4)(E). The Court further concludes that Ardoin cannot meet his burden of showing that he is in custody in violation of the Constitution or laws or treaties of the United States. The Court accordingly enters the following orders:

**IT IS ORDERED** that Petitioner Kody Dwayne Ardoin's "Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241" (ECF No. 1) is **DENIED** and his cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SIGNED** this _22nd_ day of October 2025.

*/s/ David C Guaderrama*
**DAVID C GUADERRAMA**
**SENIOR UNITED STATES DISTRICT JUDGE**